IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MINH DUNG ALUMINUM COMPANY, LTD,** : <br>  **Plaintiff** : <br> : <br> v. : <br> : <br> **ALUMINUM ALLOYS MFG LLC,** : <br> **Defendant** : | No. 1:20-cv-01764 <br><br> (Judge Kane) |

# MEMORANDUM

Before the Court is Plaintiff Minh Dung Aluminum Company, LTD ("Plaintiff")'s motion for entry of default judgment against Defendant Aluminum Alloys MFG LLC ("Defendant") pursuant to Federal Rule of Civil Procedure 55(b)(1). (Doc. No. 14.) Because Defendant has yet to appear or defend in this action, no opposition to the motion has been filed. For the reasons that follow, the Court will grant the motion in part and deny it in part and enter default judgment in favor of Plaintiff and against Defendant in the amount of $244,372.20.

## I.   BACKGROUND

Plaintiff commenced this action on September 25, 2020, alleging that Defendant breached contracts for the sale and delivery of aluminum ingots. (Doc. No. 1.) According to the complaint and exhibits thereto, Plaintiff and Defendant entered into two contracts under which Defendant—a Pennsylvania-based company—agreed to sell and ship aluminum ingots to Plaintiff—a Vietnamese company—in exchange for $118,978.20.[1] (Id. ¶¶ 1-2, 10, 26, 38.) Defendant subsequently shipped four containers to Plaintiff, two of which arrived at Haiphong Port on February 12, 2020, filled with hazardous waste rather than ingots. (Id. ¶¶ 22, 39, 41.)

---

[1] The contracts more specifically provided for the payment of an <u>estimated</u> price ($130,000.00) (Doc. No. 1 ¶¶ 13, 29), although the actual price paid for the goods totaled $118,978.00.

When Plaintiff informed Defendant about the hazardous waste, Defendant acknowledged that it had shipped nonconforming goods and promised to issue a refund and arrange for the return of waste to the United States.  (Id. ¶¶ 42-43, 47-48.)  The other two containers were apparently rerouted back to the United States.

Plaintiff's complaint asserts that Defendant has neither refunded the $118,978.20 payment for the ingots, reshipped the correct goods, arranged for return of the hazardous waste, nor provided any instructions to Plaintiff concerning the return of the waste as promised by Defendant.  (Id. ¶¶ 58-79.)  In support of its claims, Plaintiff has provided exhibits establishing that Defendant admitted that it failed to send the ingots and incorrectly sent waste.  Plaintiff's complaint seeks damages in the amount of $118,978.20—representing the amount it paid for the ingots—along with other relief, including: (1) an order directing Defendant to arrange and pay for the return shipment of the nonconforming goods to the United States; (2) economic and other compensatory damages; (3) incidental and consequential damages; (4) punitive damages; and (5) pre and post-judgment interest and costs.  (Id. at 17.)

Plaintiff served Defendant with the summons and complaint on October 21, 2020.  (Doc. No. 5.)  Defendant did not respond to the complaint, Plaintiff moved for the entry of default (Doc. No. 7), and the Clerk of Court entered default against Defendant on January 20, 2021 (Doc. No. 9).  Plaintiff then filed motions seeking a declaration that its destruction of the nonconforming hazardous waste would not constitute acceptance or ownership.  (Doc. Nos. 10, 12.)  Defendant did not respond to those motions, and the Court determined that it could not grant the sought-for relief because doing so would constitute an advisory opinion.  (Doc. No. 13 at 3-4.)  Plaintiff then filed the instant motion for default judgment.  (Doc. No. 14.)  Plaintiff seeks a judgment against Defendant in the amount of $245,097.20 representing: (1) the

unrecovered $118,978.20 it paid to Defendant for the sale of the ingots; (2) $58,394.00 in costs associated with the continued storage of the nonconforming hazardous waste; (3) $67,000.00 in lost profits stemming from the loss of a sale due to Defendant's breach; and (4) $725.00 in fees, including the filing fee Plaintiff paid to institute this action.  (Id. at 3-4.)[2]

## II.      LEGAL STANDARD

Default judgments are governed by a two-step process set forth under Rule 55 of the Federal Rules of Civil Procedure.  An entry of default by the Clerk of Court under Rule 55(a) is a prerequisite to a later entry of a default judgment under Rule 55(b).  See 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (3d ed. 2007) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a).").  Once the Clerk of Court has entered a default, the party seeking the default may then move the Court to enter a default judgment under Rule 55(b)(2).  Entry of default does not entitle a claimant to default judgment as a matter of right.  See 10 James Wm. Moore et al., Moore's Federal Practice § 55.31 (Matthew Bender ed. 2010).  Rather, decisions relating to the entry of default judgments are committed to the sound discretion of the district court.  See Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987).

Three factors control the exercise of the Court's discretion in assessing whether default judgment should be granted following the entry of default: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  See Chamberlain v. Giampapa, 210 F.3d 154, 164

---

[2] Although Plaintiff's complaint contains a prayer for relief for pre and post-judgment interest, as well as for punitive damages, Plaintiff does not now seek that relief in either its motion (Doc. No. 14) or its proposed order (Doc. No. 14-1).  Plaintiff merely seeks judgment against Defendant in the amount of $245,097.20.  (Doc. No. 14-1.)  Accordingly, the Court need not address Plaintiff's entitlement to such relief.

(3d Cir. 2000) (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)).  If, however, the defendant has been properly served but fails to appear, plead, or defend an action, a court may "enter a default judgment based solely on the fact that the default occurred," without considering the Chamberlain factors.  See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 177 n.9 (3d Cir. 1990).

"A finding that default judgment is appropriate, however, is not the end of the inquiry." Martin v. Nat'l Check Recovery Servs., LLC, No. 12-1230, 2016 WL 3670849, at *1 (M.D. Pa. July 11, 2016).  Prior to entering a default judgment, the Court must also determine whether the "unchallenged facts constitute a legitimate cause of action."  See Wright, et al., supra, at § 2688; Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd., 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) (noting that, "before granting a default judgment," courts must "ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law" (citations omitted)).  In conducting this inquiry, "the well-pleaded, factual allegations of the complaint . . . are accepted as true and treated as though they were established by proof."  See E. Elec. Corp. of N.J. v. Shoemaker Const. Co., 652 F. Supp. 2d 599, 605 (E.D. Pa. 2009) (citation omitted).  While the Court must accept as true the well-pleaded factual allegations of the complaint, the Court need not accept the moving party's factual allegations or legal conclusions relating to the amount of damages.  See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

### III.     DISCUSSION

Having reviewed the record, including Plaintiff's complaint, motion, exhibits, and accompanying affidavit, the Court finds that entry of default judgment against Defendant and in favor of Plaintiff is appropriate.  As an initial matter, the Court observes that Plaintiff's

unchallenged allegations in the complaint, taken as true, state legitimate causes of action for breaches of contract. As Plaintiff notes, its claims are governed by the United Nations Convention on Contracts for the International Sale of Goods ("CISG"), Apr. 11, 1980, S. Treaty Doc. No. 98-9 (1983), 19 I.L.M. 671 (1980)(1983), 19 I.L.M. 671 (1980), reprinted at 15 U.S.C.App. (1998) ("CISG"). (Doc. No. 10-2 at 6.)[3] It is generally recognized that the elements of a breach of contract claim under the CISG are: (1) formation; (2) performance; (3) breach; and (4) damages. See Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C., 635 F.3d 1106, 1108 (8th Cir. 2011).

Here, Plaintiff's allegations and exhibits unequivocally establish that: (1) Plaintiff and Defendant entered into two sales contracts for the sale of ingots; (2) Plaintiff paid Defendant $118,978.20 for the ingots; (3) Defendant failed to deliver the ingots pursuant to the contracts; and (4) Plaintiff suffered damages because of Defendant's failure to perform on the contracts. Concerning damages, the CISG permits an aggrieved buyer to recover damages, see 15 U.S.C.App. Art. 45, to the following extent:

> Damages for breach of contract by one party consist of a sum equal to the loss, including loss of profit, suffered by the other party as a consequence of the breach. Such damages may not exceed the loss which the party in breach foresaw or ought to have foreseen at the time of the conclusion of the contract, in the light of the facts and matters of which he then knew or ought to have known, as a possible consequence of the breach of contract.

---

[3] The CISG "governs contracts for the sale of goods between parties whose place of business is in nations that are signatories to the treaty, absent an express choice of law provision to the contrary." See Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 444 n.7 (3d Cir. 2003) (citing 15 U.S.C.App., Art. 1(1)(a)). Both the United States and Vietnam are signatories to the treaty. See id. (noting that "[t]he United States is a signatory to the CISG); see also United Nations Treaty Collection, CISG, available at https://treaties.un.org/Pages/ViewDetails.aspx?src=IND&mtdsg_no=X-10&chapter=10&clang=_en (indicating that Vietnam is a CISG signatory); UN Convention on Contracts for the International Sale of Goods (CISG), Practical Law Practice Note 2-523-2126 (same). This case involves claims for breach of contracts for the sale of goods, and the parties' contracts do not contain any choice-of-law provisions. (Doc. Nos. 2, 2-1.) Plaintiff's claims are therefore governed by the CISG.

See 15 U.S.C.App. Art. 74. Most of the damages sought by Plaintiff—i.e., the $118,978.20 it paid to Defendant pursuant to the sales contracts, the $58,394.00 it was forced to pay to store the hazardous waste at Haiphong Port, and the $67,000.00 it suffered in lost profits—are either direct or foreseeable losses stemming from Defendant's breaches of the parties' sales agreements and therefore recoverable under the CISG. The same is not true, however, of the $725.00 in costs and fees that Plaintiff seeks to recover,[4] and the Court will therefore deny Plaintiff's motion to the extent it seeks a judgment against Defendant for that amount. Thus, the total amount of recoverable damages is $244,372.20 ($244,372.20 less $725.00).

In addition, Plaintiff has offered support for its claim of a sum certain of $244,372.20 in the relevant documents accompanying its complaint and motion for default judgment. Specifically, Plaintiff has provided the affidavit of Nguyen Kim Ming, Plaintiff's director, stating that Plaintiff: (1) paid $118,978.20 for the sale of ingots under the parties' two sales contracts; (2) "incurred [$58,394.00 in] costs associated with the continued storage of the materials, which, due to their hazardous nature, cannot be re-exported pursuant to Vietnamese

---

[4] Plaintiff seeks to recover the $400.00 filing fee it paid to commence this action, $225.00 for "legal research" conducted in connection with its claims, and $100.00 for the cost of serving process on Defendant. (Doc. No. 14-9.) While there is scant authority on this issue of whether such fees are recoverable under the CISG, courts have held that "foreseeable loss" under the CISG does not include attorneys' fees. See Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc., 313 F.3d 385 (7th Cir. 2002) (holding that a loss recoverable as remedy for breach of contract under the CISG does not include attorneys' fees), cert. denied, 540 U.S. 1068 (2003). If attorneys' fees are unrecoverable under the CISG, then so too must be court filing fees and other litigation expenses. Therefore, the Court will deny Plaintiff's motion to the extent it seeks judgment in the amount of $750.00 against Defendant for costs and fees. Although some courts have considered, in the context of CISG claims for attorneys' fees, whether the underlying contract provided for the recovery of attorney fees, see Profi-Parkiet Sp. Zoo v. Seneca Hardwoods LLC, No. 13-cv-4358, 2014 WL 2169769, at *10 (E.D.N.Y. May 23, 2014), report and recommendation adopted, No. 13-cv-4358, 2014 WL 2765793 (E.D.N.Y. June 18, 2014), the parties' sales agreements here do not contain any provisions providing for such relief.

Customs . . ."; and (3) "lost $67,000.00 in income as a result of [Defendant]'s breach," which prevented Plaintiff from consummating the resale of the ingots under a previously entered-into sales contract (Doc. No. 14-6).  Plaintiff also provided: (1) copies of the underlying contracts (Doc. No. 14-2); (2) confirmations of Single Customer Credit Transfers reflecting Plaintiff's payments to Defendant, on February 21, 2020, for the amounts of $17,700.00, $14,800.00, $25,841.00, $15,537.00, and $45,000.20 (for a total of $118,978.20) (Doc. No. 14-3); (3) an itemized breakdown of the $58,394.00 in costs Plaintiff incurred to store the hazardous waste at Haiphong Port (Doc. No. 14-7); and (4) a chart reflecting the lost income that Plaintiff incurred when Defendant failed to ship the ingots—including a comparison of the price Plaintiff paid for the ingots with the resale value of the same goods in Vietnam—together with a copy of the purchase agreement (Doc. No. 14-8).  Based on Plaintiff's affidavit and these exhibits, the Court finds that Plaintiff has sufficiently substantiated the judgment amounts to which it is entitled.

Furthermore, the three Chamberlain factors weigh in favor of entering default judgment against Defendant.  First, Plaintiff will be prejudiced if the Court declines to enter default judgment because Plaintiff is unable to proceed with this action due to Defendant's failure to respond and has no other means of recovering against Defendant.  See Broad. Music, Inc., 2014 WL 4059711, at *2 (stating that the plaintiffs "w[ould] be prejudiced . . . by their current inability to proceed with their action due to [the] [d]efendants' failure to defend").  Second, Defendant has not asserted a meritorious defense to Plaintiff's claims through the filing of an answer or other responsive pleading to the complaint, or through the filing of a response to Plaintiff's prior motions or the instant motion for default judgment.  Accordingly, there is nothing from which to conclude that Defendant has a viable, litigable defense.  See Laborers Local Union 158 v. Fred Shaffer Concrete, No. 10-cv-1524, 2011 WL 1397107, at *2 (M.D. Pa.

Apr. 13, 2011). Third, the Court cannot discern from the record any excuse or justification for Defendant's default apart from Defendant's own culpability. Indeed, Defendant has failed to enter an appearance or file a timely answer to the complaint and has offered no reasons for its failure to do so. "A defendant's default, or its decision not to defend against allegations in a complaint, may be grounds for concluding that the defendant's actions are willful." Innovative Office Prods., Inc. v. Amazon.com, Inc., No. 10-cv-4487, 2012 WL 1466512, at *3 (E.D. Pa. Apr. 26, 2012). In the absence of any excuse or justification for Defendant's failure to participate in this litigation, the Court is compelled to conclude that Defendant's failure to participate in this litigation is the result of its culpable conduct. See Laborers Local Union 158, 2011 WL 1397107, at *2. Accordingly, the Court is satisfied that the Chamberlain factors counsel in favor of entering default judgment in favor of Plaintiff and will therefore grant Plaintiff's motion for default judgment.

**IV.   CONCLUSION**

Based on the foregoing, the Court will grant in part and deny in part Plaintiff's motion for default judgment. (Doc. No. 14.) Specifically, the Court will grant Plaintiff's motion to the extent it seeks a $244,372.20 judgment against Defendant and will deny Plaintiff's motion to the extent it seeks a judgment in the amount of $725.00 for costs and fees. An appropriate Order follows.